UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MOSAMMAT M. SULTANA-NEILL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | SA-21-CV-1008-FB (HJB) |
| LOUIS DEJOY, in his official capacity as Postmaster General, | § § § § | |
| Defendant. | § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion for Summary Judgment. (Docket Entry 50.)  Pretrial matters have been referred to the undersigned for consideration. (Docket Entry 3.)  For the reasons set out below, I recommend that Defendant's motion (Docket Entry 50) be **GRANTED IN PART** and **DENIED IN PART**.

**I.    Jurisdiction.**

Plaintiff Mosammat Sultana-Neill's suit presents a claim of employment retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*  (Docket Entry 33, at 14–16.)  The Court has original jurisdiction over such claims pursuant to 28 U.S.C. § 1331.  The undersigned issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**II.    Factual Background.**

Plaintiff is an employee of the United States Postal Service ("USPS"), and "a southeastern Asian Muslim woman born in Bangladesh in 1969."  (Docket Entry 33, at 2.)  She began working at USPS in 2004, in Anaheim, California.  (*Id.*)  In 2010, she transferred to Austin, Texas, where

she worked as a mail processing clerk. (*Id.*) She thereafter transferred to San Antonio, Texas, and ultimately to Pennsylvania. (*See* Docket Entry 33, at 5, 10). Her claims in this case concern her time at the Austin and San Antonio Processing and Distribution Centers ("P&DCs") from 2013 to 2022. Both centers are located within the USPS's Rio Grande District, which services several cities throughout Texas. (*See id*. at 3; Docket Entry 51-3, at 71.) During Plaintiff's employment in Austin and San Antonio, she made a number of EEOC complaints, which are included in the discussion below.

### A.     *Plaintiff's Employment in Austin.*

Plaintiff joined the maintenance department at the Austin P&DC as a custodian. (Docket Entry 33, at 3.) By 2013, she had become a Maintenance Mechanic. (*Id.* at 2–3.) Plaintiff alleges that during her tenure at the Austin P&DC, she experienced harassment from other employees "due to her race, religion, and national origin." (Docket Entry 33, at 3.) Plaintiff reported the alleged harassment to her manager, Dennis Gray. (*Id.*) Gray allegedly told Plaintiff he could do nothing about it and suggested she file a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*)

Shortly after reporting the alleged harassment to Gray, Plaintiff requested an interview for a promotion to the position of Level 09 Mail Processing Equipment Mechanic ("MPE Mechanic"). (Docket Entry 33, at 3.) Plaintiff requested that the interview be conducted at the district level because she feared that she would not receive a fair interview at the Austin P&DC. (*Id.*) Gray allegedly advised Plaintiff that Paul Allen, the Lead Manager for the Rio Grande District, denied her request for a district-level interview and advised that he would schedule her for a local interview instead. (*Id.*) Plaintiff alleges that she told Gray she would not participate in a local interview unless Allen specifically explained why he denied her request for a district-level

2

interview. (*Id.*) According to Plaintiff, no explanation from Allen was ever forthcoming and Gray never responded to her. (*Id.*)

Despite Plaintiff's request, Gray allegedly scheduled Plaintiff for a local interview at the Austin P&DC, which Plaintiff chose not to attend. (Docket Entry 33, at 4.) Plaintiff alleges that Gray and Allen responded harshly to her absence, telling her "she would be denied any interview request until 2018, or for three years." (*Id.* (emphasis removed).) According to Plaintiff, Gray and Allen "manufactured" her absence from the interview, and the harsh consequences that followed, "as a result of her race, national origin, and religion." (*Id.*)

Plaintiff filed a complaint with USPS's EEOC in January of 2015,[1] alleging that she was subject to discrimination in violation of Title VII. (*Id.*) Plaintiff named Gray and Allen in her complaint. (*Id.*) Shortly after she filed the complaint, Plaintiff alleges that Gray brought her into his office and "loudly admonished her for the filing." (*Id.*)

On December 30, 2016, Plaintiff requested a transfer to the San Antonio P&DC. (Docket Entry 33, at 4.) Shortly thereafter, however, Plaintiff underwent surgery for which she requested and received medical leave beginning on January 22, 2017. (*Id.* at 5.) This put Plaintiff's transfer request on hold, she alleges, because USPS policy does not permit employees to transfer while they are on medical leave. (*Id.*)

Plaintiff returned to the Austin P&DC full-time in July of 2017. (*Id.*) A couple months after returning to work, she contacted Human Resources ("HR") to check on the status of her transfer request. (*Id.*) HR approved Plaintiff's transfer request and arranged for her to join the San Antonio P&DC on November 26, 2017. (*Id.*) Plaintiff alleges, however, that about a month

---

[1] Plaintiff alleges that the EEOC's investigation ended on October 25, 2018, with a finding of no discrimination. (Docket Entry 33, at 7.) She further alleges that on September 29, 2019, she filed an appeal with the Office of Federal Operations, which is still pending. (*Id.*)

3

before her transfer she was informed that the Rio Grande District Office—and specifically Paul Allen—"was attempting to deny her transfer to San Antonio based on poor attendance." (*Id.*) According to Plaintiff, Allen was attempting to sabotage her transfer "in retaliation for being named in the ongoing 2015 EEO investigation." (*Id.*) Plaintiff was nevertheless ultimately transferred to the San Antonio P&DC on January 6, 2018. (*Id.*)

### B.  *Plaintiff's Employment in San Antonio.*

Upon her arrival at the San Antonio P&DC, Plaintiff requested an interview to be added to a promotional roster for the position of MPE Mechanic and requested to retake a specific portion of her Maintenance Exam—requests to which Plaintiff claims she was entitled as a transfer employee under USPS policy. (Docket Entry 33, at 6; Docket Entry 50-2, at 5.) According to Plaintiff, William Hatley, Manager of Maintenance Operations, ignored Plaintiff's requests. (Docket Entry 33, at 6; Docket Entry 50-2, at 5; Docket Entry 50-7, at 3.)

Plaintiff alleges that she renewed her requests during San Antonio P&DC's "open season," which took place in March of 2018. (*Id.*) "Open season," according to Plaintiff, is a month-long process held every three years that allows maintenance employees to test, retake tests, or take interviews; followed by a 150-day window during which time management must complete any promotional decisions. (*Id.*) Plaintiff alleges that Hatley denied her open-season request for an interview to be added to the promotional roster for an MPE Mechanic position,[2] but she was given permission to retake the requested portion of her Maintenance Exam. (Docket Entry 33, at 6; Docket Entry 50-2, at 5–6.) When she attempted to take the exam on the scheduled exam date,

---

[2] Plaintiff alleges in an EEOC complaint that she received a letter from Hatley in July of 2018 stating that she "did not qualify for open season consideration for promotion." (Docket Entry 50-2, at 5.) Plaintiff explained in her EEOC complaint that employees were required to submit their applications by March of 2018, but that management then had 150 days to make a final decision regarding any promotion requests. (*Id.*)

4

however, Plaintiff alleges that she "was unable to do so because management had conveniently incorrectly spelled her name in the system." (*Id.*) Plaintiff alleges that, when Hatley finalized the promotional roster on January 11, 2019, her name was not on it. (Docket Entry 33, at 7; Docket Entry 50-2, at 6.) According to Plaintiff, whereas many other employees at the San Antonio P&DC received promotional interviews during the March 2018 open season, she alone was singled out and denied the opportunity. (Docket Entry 33, at 6; Docket Entry 50-2, at 6.)

In March of 2018, Plaintiff applied for the temporary position of acting supervisor.[3] (*See* Docket Entry 33, at 7; Docket Entry 50-2, at 8.) Plaintiff claims that her application was rejected by Virgil Tolbert, Manager of Maintenance Operations, on the grounds that she had insufficient experience for the job. (Docket Entry 33, at 7; Docket Entry 50-2, at 8.) She claims that Tolbert did so at the behest of Paul Allen. (Docket Entry 50-2, at 8.) In his EEOC investigative affidavit, Tolbert disputes that he ever denied Plaintiff's application for lack of experience. (Docket Entry 50-5, at 5.) Rather, Tolbert certifies that he in fact granted Plaintiff an acting supervisor position, albeit not until a position became available. (*Id.* at 4–5.) Plaintiff testified at her deposition that she assumed the role of acting supervisor in April or May of 2019. (Docket Entry 51-3, at 56.)

On February 23, 2019, Plaintiff made a telephone call to USPS's EEOC via a 1-800 number posted throughout the San Antonio P&DC. (*Id.*; Docket Entry 50, at 5; Docket Entry 51-3, at 74.) Plaintiff alleges that she was calling "to lodge her complaint." (Docket Entry 33, at 8.) Her call to the 1-800 number was received by an automated response system; "no human answers the phone." (Docket Entry 51-3, at 45.) She interacted with the automated response system which

---

[3] Although Plaintiff's amended complaint alleges that she applied for the acting supervisor position on June 2, 2019 (Docket Entry 33, at 7), the EEOC documents in the summary judgment record suggest that Plaintiff actually applied for the position in March of 2018. (*Compare* Docket Entry 33, at 7, *with* Docket Entry 50-2, at 7–8.)

5

prompted her to provide basic identifying information—*e.g.*, her name, employee ID number, date of birth. (*Id.* at 74–5.) By providing this information, Plaintiff prompted the automated system to send her a "package . . . of forms" to be completed and then sent back to the District Office. (*Id.*) Plaintiff alleges that she completed and submitted said forms "within 15 days of [their] receipt." (Docket Entry 33, at 8.) According to the EEOC's documentation, however, Plaintiff's initial, informal contact with the EEOC did not occur until April 1, 2019. (Docket Entry 50-8, at 2.)

On June 2, 2019, Plaintiff applied for an open position as Supervisor of Maintenance Operations at the San Antonio P&DC. (Docket Entry 33, at 8; Docket Entry 50-1, at 2.) The job positing specified that the position was "posted District-Wide," such that "[a]ll career Postal employees . . . assigned within the [Rio Grande] District . . . [we]re eligible to apply for th[e] position." (Docket Entry 50-6, at 11.) According to Plaintiff, this meant the job "specifically limited applicants to those postal employees who were employed . . . within the Rio Grande District." (Docket Entry 33, at 8; Docket Entry 51-3, at 84–85.) Plaintiff was selected for an interview. (Docket Entry 33, at 8; Docket Entry 51-3, at 87.) The interviews were conducted by Robert Spagnolia, Lead Manager of Maintenance Operations, who alone was responsible for making the hiring decision. (Docket Entry 50-6, at 1, 5.) There were several other applicants from within the Rio Grande District, and at least one of them was interviewed in addition to Plaintiff. (Docket Entry 51-3, at 87; Docket Entry 50-6, at 9.) Ultimately, on August 19, 2019, Spagnolia awarded the position to Sudeep Bhattarai, an experienced supervisor of maintenance operations from the Boston P&DC in Massachusetts. (Docket Entry 33, at 8; Docket Entry 50-6, at 4; Docket Entry 51-3, at 87.) According to Plaintiff, Bhattarai was ineligible because he was employed outside the Rio Grande District. (Docket Entry 33,at 8; Docket Entry 51-3, at 87–88.) According to Spagnolia, Bhattarai was not ineligible because he was a career non-bargaining employee at the

6

same or higher grade, and could therefore be considered and hired outside the competitive process applicable to Plaintiff.  (*See* Docket Entry 50-6, at 7, 11.)

On August 1, 2019, Plaintiff filed a formal EEOC complaint against Paul Allen, William Hatley, and Virgil Tolbert, alleging discrimination based on her race, religion, national origin, age, and retaliation.  (Docket Entry 33, at 8; Docket Entry 50-2, at 2.)  Plaintiff's EEOC complaint rested on: (1) Paul Allen's inference with her transfer to the San Antonio P&DC; (2) William Hatley alleged denial of her opportunity to interview for the MPE Mechanic position or be placed on the promotional roster for that position; and (3) Virgil Tolbert and Paul Allen's alleged denial of her application for the position of acting supervisor.  (*See* Docket Entry 50-2, at 9.)  After Spagnolia awarded the supervisor position to Bhattarai, on August 19, 2019, Plaintiff apparently amended her EEOC complaint to name him as an additional defendant, and add a claim that the decision not to give her the position was an additional act of discrimination and retaliation.  (*See* Docket Entry 50-2, at 9; Docket Entry 50-6, at 4.)

On December 18, 2019, Plaintiff suffered an asthma attack after being exposed to some chemicals at the San Antonio P&DC.  (Docket Entry 33, at 9.)  She left the immediate area of the chemicals, but did not feel well enough to drive home.  (*Id.*)  Plaintiff alleges that her supervisor at the time, Marlon Cardenas, "attempted to coerce . . . [her] to leave the premises altogether." (*Id.*)  Plaintiff alleges that she requested an FMLA case number from Cardenas, but he refused to provide one.  (*Id.*)  She also claims that the very next day, on December 19, 2019, Cardenas "further retaliated against . . . [her] by ordering her to lunch during a motor replacement training, thereby singling her out to miss the important training." (*Id.*)

Fast-forward almost three years.  In April of 2022, Plaintiff alleges she discovered for the first time that her employee file had been "flagged for 'attendance review' for *eight years*,

7

beginning January 6, 2017"—*i.e.*, the date of her transfer to the San Antonio P&DC—"through March [of] 2024." (Docket Entry 33, at 9.) Plaintiff alleges that, at the time of her transfer to the San Antonio P&DC, on January 6, 2017, the only USPS employee with an attendance-related grievance against Plaintiff was Paul Allen—though she contends that the grievance was fabricated. (*Id.*) According to Plaintiff, this eight-year flag on her employee profile was simply a retaliation by Allen over Plaintiff's naming him in her original EEOC complaint (*Id.*)

In May of 2022, Plaintiff requested a transfer to P&DC in Pennsylvania. (Docket Entry 33, at 9.) She alleges that when the Pennsylvania P&DC sought her employee record from the San Antonio P&DC, Cardenas called her into his office. (*Id.* at 10.) Plaintiff alleges that she activated the recording function on her cell phone before entering his office. (*Id.*) Before the meeting began, she advised Cardenas that she was recording their conversation, at which point he ordered her to leave. (*Id.*) Shortly thereafter, on June 2, 2022, Plaintiff was suspended for seven days. (*Id.*) According to Plaintiff, the stated reason for the suspension was simply "misconduct." (*Id.*)

### III. Procedural History.

Proceeding *pro se*, Plaintiff filed her original complaint in this case on October 18, 2021. (Docket Entry 1.) In her original complaint, Plaintiff alleged that Defendant subjected her to discrimination and retaliation in violation of Title VII. (*Id.* at 7–15.) Defendant moved to dismiss the complaint for failure to exhaust administrative remedies and for failure to state any plausible claim of discrimination or retaliation. (Docket Entry 6, at 7–16.) The undersigned recommended that the motion be granted in part and denied without prejudice in part. (Docket Entry 19, at 11.) The undersigned recommended that the exhaustion argument be denied without prejudice to reconsideration at the summary judgment stage. (*Id.*) Shortly thereafter, the undersigned

appointed counsel for Plaintiff.  (Docket Entry 24.)  The District Court adopted the undersigned's recommendation and ordered Plaintiff to amend her complaint.  (Docket Entry 28, at 2.)

Plaintiff filed her amended complaint—the live pleading—on September 14, 2022.  (Docket Entry 33.)  The amended complaint appears to have abandoned any discrimination claims.  (*See id.* at 14–16.)  Defendant filed a second motion to dismiss for failure to exhaust administrative remedies and failure to state a plausible claim of discrimination or retaliation.  (Docket Entry 34.)  Again, the undersigned recommended that the motion be granted in part and denied in part.  (Docket Entry 40, at 10.)  This time, the undersigned recommended that the motion be granted as to any remaining discrimination claims, but denied as to Plaintiff's retaliation claims.  (*Id.*)  The undersigned also recommended, once again, that the Defendant's administrative exhaustion defense be denied without prejudice to reconsideration at the summary judgment stage.  (*Id.*)  Again, the District Court adopted the undersigned's recommendation.  (Docket Entry 43, at 1–2.)

On December 18, 2023, Defendant filed the motion for summary judgment currently before the Court.  (Docket Entry 50.)  In the motion, Defendant argues that Plaintiff failed to timely exhaust her administrative remedies for many of the alleged instances of retaliation, and that she failed to present a prima facie case as to two of her retaliation claims because she had not shown a causal connection between the alleged adverse employment actions and her prior EEOC activity.  (*Id.* at 1.)  Defendant also argues that, even if Plaintiff presented a prima facie case as to those claims, it had legitimate, non-retaliatory reasons for its actions, and Plaintiff had failed to show that those reasons were pretextual.  To support its motion, Defendant attached excerpts of Plaintiff's deposition testimony, a copy of Plaintiff's application for the Supervisor position that was ultimately awarded to Sudeep Bhattarai, and various EEOC documents—including her August 2019 formal EEOC complaint, several investigative affidavits from the individuals named in that

9

particular complaint, and an EEOC document recounting the chronology of Plaintiff's informal complaint process prior to filing the August 2019 formal EEOC complaint. (Docket Entry 50-1–8.)

Plaintiff responded to the motion, and provided the Court with the full transcript of her deposition testimony. (Docket Entries, 51, 51-3.) Defendant replied to Plaintiff's response. (Docket Entry 52.)

## IV. Legal Standard.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact," and that they are "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. United States Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 447 U.S. at 248). When considering a motion for summary judgment, a court "must view all facts and evidence in the light most favorable to the non-moving party." *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, "[w]hen the movant also carries the burden of proof at trial, . . . [its] burden is even higher;" it must "establish beyond peradventure all of the essential elements of the claim." *Guzman v. Allstate Assur. Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation and emphasis omitted). If the moving party carries its burden, the nonmovant must "direct the court's attention

to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 851 (N.D. Tex. 2009) (citing *Celotex*, 477 U.S. at 323–24).

"The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence." *Arthur v. Liberty Mut. Pers. Ins. Co.*, No. SA-21-CV-00602-FB, 2022 WL 17824520, at *1 (W.D. Tex. Dec. 20, 2022) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)), *report and recommendation adopted*, No. SA-21-CA-602-FB, 2023 WL 2557392 (W.D. Tex. Feb. 3, 2023). The Court is required to consider only the party's cited materials. FED. R. CIV. P. 56(c)(3); *see Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence . . . .") (citation omitted).

V.   **Analysis.**

Defendant advances two main arguments to support its motion for summary judgment. First, Defendant argues that the lion's share of Plaintiff's alleged acts of retaliation are barred by Plaintiff's failure to timely exhaust her administrative remedies. (Docket Entry 50, at 5–6.) Second, Defendant argues that two of Plaintiff's retaliation claims fail on their merits, because Plaintiff failed to establish a prima facie case of retaliation, and Defendant provided legitimate, non-retaliatory reasons for its actions that Plaintiff has not rebutted. (*Id.* at 6–11.) This Report and Recommendation considers the administrative-exhaustion argument before turning to the arguments on the merits.

A.   ***Administrative Exhaustion.***

"Before a federal civil servant can sue h[er] employer for violating Title VII, [s]he must . . . 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days

11

of the date of the matter alleged to be discriminatory.'" *Green v. Brennan*, 578 U.S. 547, 549 (2016) (quoting 29 C.F.R. § 1614.105(a)(1) (2015)). "Failure to initiate contact within the required period bars review of the claim in federal court absent waiver, estoppel, or equitable tolling." *Austin v. Potter*, 358 F. App'x 602, 605 (5th Cir. Jan. 4, 2010) (citing *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992)). "In Title VII cases, 'the limitations period starts running when the plaintiff knows of the discriminatory act.'" *Austin*, 358 F. App'x at 605 (quoting *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n.2 (5th Cir. 1992)).

Failure to exhaust administrative remedies is an affirmative defense. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018), *aff'd*, 139 S. Ct. 1843 (2019); *Lopez v. Kendall*, No. 22-50411, 2023 WL 2423473, at *1 (5th Cir. Mar. 9, 2023). Thus, to obtain summary judgment as to a specific allegation of retaliation on this basis, Defendant must demonstrate "beyond peradventure" that Plaintiff failed to initiate contact with her EEO counselor within 45 days of her discovery of that alleged act of retaliation. *See Guzman*, 18 F.4th at 160.

Defendant argues that Plaintiff failed to exhaust her administrative remedies for any alleged acts of retaliation that occurred "more than 45 days prior to April 1, 2019"—the date, according to Defendant, "that she actually initiated EEO contact. . . ." (*Id.* at 5.) To support this assertion, Defendant attached an EEOC document entitled EEO Alternative Dispute Resolution Specialist's (ADRS) Inquiry Report, which contains a section recounting the "Chronology of [the] Informal Process." (Docket Entry 50-8, at 2.) According to that document, in EEOC case no. 1G-781-0059-19—the case for which Plaintiff eventually filed a formal complaint on August 1, 2019—Plaintiff's "Date of Initial Contact with EEO Office" was "April 1, 2019." (*Id.*)

Defendant acknowledges that Plaintiff's amended complaint alleges she initiated contact with the EEOC on February 23, 2019, but points to evidence in the summary judgment record

12

contradicting this. Defendant points out that, at her deposition, Plaintiff testified that on February 23, 2019, "she merely called a '1-800' number and spoke to an automated system," which subsequently "sent her a 'package' to fill out." (Docket Entry 50, at 5; *see* Docket Entry 51-3, at 45–46, 51, 74–76.) Defendant argues that "requesting a complaint form through an automated system is not sufficient to establish 'EEO contact.'" (Docket Entry 50, at 5–6.)

Defendant's argument is consistent with EEOC rulings, which hold that to initiate contact, "an employee must (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination." *Pauling v. Sec'y of Dep't of Interior*, 960 F. Supp. 793, 803 (S.D.N.Y. 1997) (collecting EEOC adjudications). As Defendant correctly points out, on February 23, 2019, Plaintiff neither "sp[oke] with an agency official (only an automated system)," nor "discussed the nature or type of alleged incidents (only biographic information and contact details)," nor "provided any factual basis by which any employee of the agency could reasonably know that . . . [Plaintiff] was alleging discrimination or retaliation on the part of USPS." (Docket Entry 50, at 6.)

In her response, Plaintiff offers no evidence to controvert Defendant's assertion that she did not initiate contact with her EEO counselor until April 1, 2019. The only evidence attached to Plaintiff's response is the transcript of her deposition, where she testified that she merely called an automated 1-800 number on February 23, 2019, but never actually spoke to anyone. (*See* Docket Entry 51-3.) In fact, Plaintiff apparently concedes that most of the alleged instances of retaliation in her amended complaint are time-barred, suggesting only that the Court may nevertheless consider those time-barred instances as background evidence to support her timely retaliation claims, if any. (Docket Entry 51, at 9–10.) *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

13

101, 113 (2002) (holding that employees may use related, prior acts which are themselves time-barred "as background evidence to support a timely claim"); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) ("Discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts.").

Inasmuch as Defendant has produced uncontroverted evidence showing that Plaintiff did not contact her EEO counselor until April 1, 2019—and given that Plaintiff offers neither evidence nor argument to dispute this—the undersigned agrees with Defendant that Plaintiff is barred from seeking relief for any retaliation alleged to have occurred more than 45 days before April 1, 2019—*viz.*, February 15, 2019. *See Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Thus, Defendant's motion for summary judgment should be granted with respect to any relief sought by Plaintiff for instances of retaliation alleged to have occurred before February 15, 2019—although they may be considered as background evidence regarding other claims.[4]

### B. *The Merits.*

Plaintiff's arguably has five retaliation claims that are not barred by her failure to exhaust administrative remedies:

---

[4] The untimely retaliation claims for which Plaintiff may not seek relief—but which she may present as background evidence at trial—are (1) Paul Allen's alleged interference with her transfer to San Antonio P&DC in 2017; (2) William Hatley's alleged refusal in 2018 to let Plaintiff interview for the promotional roster for a MPE Mechanic position or retake portions of her Maintenance Exam; (3) Hatley's alleged denial in 2018 of Plaintiff's request to interview for the promotional roster for a MPE Mechanic position during open season; (4) Hatley's alleged prevention of Plaintiff's retaking portions of her Maintenance Exam during open season in 2018 by intentionally misspelling her name in the system; (5) Virgil Tolbert's alleged denial of Plaintiff's application for the role of acting supervisor in 2018; and (6) Hatley's failure on January 11, 2019 to include Plaintiff's name on the promotional roster for a Maintenance Mechanic position. (*See* Docket Entry 33, at 2–8; Docket Entry 50-2, at 3–9.)

(1) that on August 19, 2019, Defendant awarded a Supervisor position Sudeep Bhattarai instead of Plaintiff;

(2) that Defendant attempted to coerce Plaintiff into leaving work on December 18, 2019, after she suffered an asthma attack;

(3) that Defendant barred Plaintiff from attending a motor replacement training on December 19, 2019;

(4) that Defendant flagged Plaintiff's employee file for "attendance review" for eight years—from January 2017 through March 2024—which Plaintiff first discovered in April of 2022; and

(5) that Defendant suspended Plaintiff for seven days, on June 2, 2022, based on some unspecified allegation of "misconduct."

(*See* Docket Entry 33, at 8–10.)[5] Of the five retaliation claims that appear to survive, Defendant challenges the sufficiency of Plaintiff's case with respect to only one of them—Plaintiff's claim that Defendant retaliated against her by awarding the supervisor position to Sudeep Bhattarai on

---

[5] While it is unclear whether Plaintiff exhausted her administrative remedies with respect to claims (2)–(5), it makes no difference here, as Defendant challenged only the timeliness of retaliation claims preceding February 15, 2019. (*See* Docket Entry 50, at 5–6.) As the exhaustion requirement is not jurisdictional, the Court has no obligation of its own to determine whether Plaintiff exhausted her administrative remedies with respect to these remaining claims. *See Davis* 893 F.3d at 306 ("Title VII's administrative exhaustion requirement is not a jurisdictional bar to suit."), *aff'd*, 587 U.S. 541 (2019).

With regard to claim (4), Plaintiff alleges that she did not discover that her employee file was flagged for attendance review until April of 2022—despite that the file had been flagged since January of 2017. As stated earlier, the limitations period for exhausting administrative remedies in Title VII cases begins to run when the plaintiff discovers a violation. *See Austin*, 458 F. App'x at 605. Defendant does not challenge Plaintiff's allegation regarding the date of her discovery that the file was flagged.

August 19, 2019, rather than promoting her into that role.[6] As such, that is the only claim that is addressed below.

  1. *Applicable legal standard.*

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because [s]he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)). "The allocation of the burden of proof in Title VII retaliation cases depends on the nature of the plaintiff's evidence supporting the causation element." *Saketkoo*, 31 F.4th at 999 (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). Here, Plaintiff's retaliation claim "relies entirely on circumstantial evidence, and is therefore subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). In said framework, the burden of production shifts back and forth but "the burden of persuasion remains with the employee [*i.e.*, Plaintiff] throughout." *Saketkoo*, 31 F.4th at 1000 (citing *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 20200))

Plaintiff has the initial burden of establishing a prima facie case of retaliation. *Saketkoo*, 31 F.4th at 1000 (citing *Ackel*, 339 F.3d at 385). To establish a prima facie case, Plaintiff must show "(1) she engaged in a protected activity; (2) 'she suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment

---

[6] While Defendant also argues that Plaintiff failed to make a prima facie case that Defendant retaliated against her by not placing her on the promotion roster on January 11, 2019. (*see* Docket Entry 50, at 8–9), Plaintiff failed to timely exhaust her administrative remedies with respect to that claim.

16

action.'" *Saketkoo*, 31 F.4th at 1000 (quoting *Brown*, 969 F.3d at 577). If a plaintiff fails to raise a genuine dispute at this stage makes it unnecessary to consider the later stages, as the claim fails as a matter of law. *Alkhawaldeh*, 851 F.3d at 426.

    2. *Discussion*.

Defendant argues that Plaintiff failed to make a prima facie case of retaliation with respect to Defendant's hiring of Sudeep Bhattarai as Supervisor of Maintenance Operations for the San Antonio P&DC in August of 2019. (Docket Entry 50, at 9.) Specifically, Defendant argues that Plaintiff failed to demonstrate a causal connection between Plaintiff's prior EEOC activity and Defendant's decision to award the position to Bhattarai instead of her. To support its argument, Defendant points to Plaintiff's deposition, during which she testified that Defendant's decision to hire Bhattarai was "not discrimination," but rather that the decision "violated the contract." (Docket Entry 50-4, at 13.) As Plaintiff explained, Defendant's hiring of Bhattarai, an out-of-district employee, was improper because the position "was posted District-Wide," which she contends meant that the only employees eligible for the position were those from "five offices" within the Rio Grande District, including employees as the San Antonio office where she worked. (Docket Entry 51, at 13; *see also* Docket Entry 33, at 8.) Plaintiff contrasted this position to those which are posted "Area-Wide" or "Service-Wide," whereby the employees eligible for applying are those working in either of 13 specific southern state or those employed anywhere throughout the nation, respectively. (*Id.* at 13; Docket Entry 51, at 82–83.)

Contrary to Plaintiff's deposition testimony, it does not appear that the hiring of Bhattarai was improper. During the EEOC investigation, Robert Spagnolia, who was solely responsible for the hiring decision in this case, testified by affidavit that Bhattarai was in fact eligible for the position, because the job posting permitted "[n]on-competitive" applications "from career non-

17

bargaining employees at the same or higher grade level . . . [to] be submitted directly to the selecting official," who could consider them, "outside this competitive process." (Docket Entry 50-6, at 7, 11.) The district-wide restriction on which Plaintiff relies applied only to "competitive" applicants like Plaintiff—applicants who were required to "apply online . . . . [by] [c]omplet[ing] the candidate profile, questionnaires, and a summary of accomplishments addressing the requirements stated on the job posting." (*Id.* at 12.)

Even assuming without deciding that Bhattarai was ineligible, the question for purposes of Plaintiff's prima facie case is not whether Defendant's hiring of Bhattarai was in violation of the posting, as Plaintiff argues, or whether it was non-discriminatory, as Defendant argues that Plaintiff concedes, but instead whether it was causally connected to Plaintiff's EEOC activity. On this issue, Plaintiff's claim necessarily fails. Spagnolia testified in his EEOC affidavit that he first learned about Plaintiff's prior EEOC activity on October 2, 2019—*after* making the decision to award the Supervisor position to Bhattarai. (*Id.* at 4.) Plaintiff has produced no evidence to contradict Spagnolia's testimony. . If Spagnolia did not know of Plaintiff's protected activity when he hired Bhattarai, there cannot be a causal connection between the two events. Because Plaintiff has not presented evidence raising a genuine dispute as to this element of her prima facie case, Plaintiff's claim necessarily fails, and Defendant is entitled to summary judgment on that particular claim of retaliation.[7]

---

[7] Even if Plaintiff had raised a genuine dispute as to her prima facie case, Defendant has produced a legitimate, non-retaliatory reason for hiring Bhattarai. Spagnolia certified in his EEOC affidavit that Bhattarai was chosen "because he had been doing that job for four previous years in Boston." (Docket Entry 50, at 9; Docket Entry 50-6, at 6.) Plaintiff has provided no evidence to rebut this non-retaliatory basis for the hiring decision.

18

**VI.     Conclusion and Recommendation.**

For the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment (Docket Entry 50) be **GRANTED IN PART** and **DENIED IN PART**. The Court should **GRANT** summary judgment for Defendant on any claims arising from instances of retaliation alleged to have occurred or to have been discovered *before* February 15, 2019, as those claims are barred as a result of Plaintiff's failure to timely exhaust her administrative remedies. With respect to the claims arising from instances of retaliation alleged to have occurred or to have been discovered *after* February 15, 2019, I recommend that the Court **GRANT** summary judgment as to Plaintiff's claim regarding her non-selection for the Supervisor position in August of 2019. In all other respects, summary judgment should be **DENIED**.

**VII.    Notice of Right to Object**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed within **fourteen (14) days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "[f]rivolous, conclusory, or general objections can be ignored." *Croy v. United States*, 697 F. Supp. 3d 653, 662 (W.D. Tex. 2023) (Moses, C.J.) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on August 19, 2024.

_____
Henry J. Bemporad
United States Magistrate Judge